[Sac. No. 899. Department Two.—April 12, 1902.]

ALFRED HENRY KEAST et al., Respondents, v. SANTA YSABEL GOLD MINING COMPANY, Appellant.

ACTION FOR DEATH—MASTER AND SERVANT—UNSUITABLE APPLIANCE— QUESTION FOR JURY.—In an action by heirs at law for negligently causing the death of a servant of the defendant by the fall of timber which became detached from a hook and fell down a shaft where the deceased was employed as a miner, where the evidence is conflicting as to whether the hook was unsafe and improper for the use to which it was put, the question of the unsuitableness of the appliance was properly left to the jury, and its verdict will not be disturbed upon appeal.

ID.—NEGLIGENCE OF FELLOW-SERVANTS.—Any culpable carelessness upon the part of fellow-servants of the deceased in permitting the timber to jam and ordering it to be lowered while jammed, cannot relieve the employer from liability, where it appears, notwithstanding, that the accident would not have occurred if the hook had been reasonably safe for the purpose of lowering timber.

ID.—KNOWLEDGE OF CONDITION OF APPLIANCE—ASSUMPTION OF RISK.—Although the deceased knew the condition of the hook since he began to work as a miner at the bottom of the shaft, yet where he only knew it to be reasonably safe for the use to which it was put in the raising and lowering of ore-buckets, and did not know that it was to be used for the first time in lowering timbers down the shaft where he was at work, he cannot be said to have assumed the risk of danger from the use of the hook in lowering the timber.

ID.—EVIDENCE—EXPECTANCY OF LIFE—BOOK CONTAINING MORTUARY TABLES—PRELIMINARY PROOF.—In an action for death the court may admit in evidence any standard work containing a standard mortuary table showing the expectancy of life, to ascertain the probable duration of the life of the deceased, without requiring preliminary proof of the authenticity of such a table where the court is satisfied thereof without such proof; but if it desires preliminary proof, it may require it.

ID.—PRIVILEGED COMMUNICATION—TESTIMONY OF PHYSICIAN.—The physician who attended the deceased after he received the injuries which caused his death cannot be questioned as to his knowledge of such injuries acquired in his professional capacity.

ID.—MEASURE OF DAMAGES—INSTRUCTION.—In an action for death it is proper to instruct the jury that if their verdict is for the plaintiffs, such damages may be given as under all the circumstances of the case may be just, not exceeding the amount prayed for; and that in determining the amount of such damages they may consider any pecuniary loss suffered from the death by their being deprived of the support of the deceased, and the relations proved as existing between them and the deceased at the time of his death, and any injury sustained by them in the loss of his society.

APPEAL from a judgment of the Superior Court of Tuolumne County and from an order denying a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

F. W. Street, for Appellant.

F. P. Otis, for Respondent.

HENSHAW, J.—Plaintiffs, the heirs at law of Alfred H. Keast, sued defendant to recover damages for negligently

causing his death. From the judgment which followed the verdict of the jury in their favor, and from the order denying its motion for a new trial, defendant appeals.

Alfred H. Keast was a miner in the employ of defendant, and at the time of his death was at work with a companion at the bottom of a shaft. By order of the foreman a timber was sent down the shaft, to be landed at the five-hundred-foot level. While the workmen at this point were engaged in hauling this timber from the shaft onto the station the fastening became detached and the timber fell, struck Keast, and so injured him that he died two days after. To lower the timber, "dogs," to which were attached a chain, were driven securely into it. On this chain was a ring. To the end of the cable was attached a hook, and this hook was inserted in the ring. When the timber had thus been lowered to the five-hundred-foot level its descent was stopped, and the men at that level fastened a rope to it and proceeded to drag it onto the landing. It had not been lowered quite far enough to permit free entry to the landing, and consequently, in some way,—just how is not clearly defined,—the upper end of it caught or jammed. The signal was then given to lower it further, and the signal being obeyed the hook detached itself, and the beam of wood fell down the shaft. It is undisputed that the timber fell because the hook became detached. The negligence charged against defendant was that the hook was an unsafe, insecure, and inadequate appliance. The hook was brought into court and exhibited to the jury. It was not an open hook, but had a clevis, or tongue, to prevent detaching. It was not a spring which held this clevis in place, however, but a clamp, which was liable in lowering to be knocked up and off the clevis, and which in this particular instance was so worn and loose as to be easily removable. Evidence was introduced upon the part of the plaintiffs that the hook was unsafe and improper for the use to which it was put. Upon the part of the defense the evidence was generally that it was a safe hook, "if used with ordinary care." The fact would seem to be that in its condition it was little better adapted for the purpose than would have been an open hook, and the ordinary care required for its use was the care that would have been required in managing such an open hook. The question of the unsuitableness of the appliance was one, under

the facts, properly left to the jury, and its verdict will not be disturbed.

The defendant's contention is, that the injury was caused by the negligence of the deceased's fellow-workmen, this alleged negligence resting in the fact that in hauling the timber on to the level they permitted it to jam. There cannot in this—a thing that is apt to occur at any time under such circumstances—be perceived any culpable carelessness upon the part of the fellow-servants; but even so, the fact still remains that, notwithstanding the jamming of the timber and the subsequent order to lower away, the accident would not have occurred if the hook had been reasonably safe for the purposes of its use. It is further insisted that the deceased knew the condition of the hook, since he worked in the mine and used the hook for some months, and therefore took the risks which resulted in his death. But the deceased worked as a miner, and the hook, as he knew it to be used, was employed only in raising and lowering ore-buckets. He did not know that it was to be used for lowering timbers down the shaft at the bottom of which he was at work. It had never before been employed for that purpose, and while it might have been reasonably safe for the purpose of raising and lowering ore-buckets, it might well have been, as the jury found it to be, wholly unsafe for the sending down of timbers to the different levels.

There was no error of the court in admitting in evidence McCarty's Statistician and Economist containing Farr's table of expectancy of life to show the probable duration of the life of the deceased. It is not questioned that proper evidence of such expectancy of life was admissible. In some courts it is said that such tables are admissible after proper preliminary proof of their authenticity and standard quality. Such proof in this case was not made, but the general weight of authority is to the contrary, and permits the introduction of such tables as are satisfactory to the court. The court may or may not require such preliminary proof, depending upon whether of its own knowledge it is satisfied, or whether it desires evidence to satisfy itself of the authenticity of the tables. Thus in *Gallagher* v. *Market Street R. R. Co.*, 67 Cal. 13,[1] it is said: ''Thus mortuary tables for estimating the

---

[1] 56 Am. Rep. 713.

probable duration of life of a party at a given age . . . are admissible to prove facts of general notoriety and interest in connection with such subjects as may be involved in the trial of the cause." Adams on Trial Evidence (p. 724) says: "The mode of ascertaining present value of life estates is in some cases regulated by a statute or rule of court; where it is not, any standard table *recognized by the court,* or shown to be such by the testimony of a qualified witness, is competent." In American and English Encyclopædia of Law (vol. 20, title "Mortuary Tables,") it is said: "In general it seems that life tables may be shown by any standard work containing them, and in some cases experts have been allowed to testify as to their authenticity; but it would seem that, as courts take judicial notice of standard tables, no preliminary proof is necessary."

Objections were sustained by the court to certain questions asked by defendant of the physician who had attended Keast in his last sickness. The physician had been called to the stand by defendant, and the questions went to the knowledge of the injuries of the deceased which he had acquired while attending him in a professional capacity. The objections were properly sustained under subdivision 4 of section 1881 of the Code of Civil Procedure. (*Harrison* v. *Sutter Street Ry. Co.,* 116 Cal. 156.)

Exception is taken to the fifth instruction asked by plaintiffs and given by the court, in the following language: "The jury are instructed that if your verdict shall be for the plaintiffs, such damages may be given by you to plaintiffs as, under all the circumstances of the case, may be just, but not exceeding the amount prayed for in the amended complaint. *And in determining the amount of such damages you have the right to take into consideration the pecuniary loss, if any, suffered by these plaintiffs in the death of William H. Keast by being deprived of his support; also the relations proved as existing between plaintiffs and deceased at the time of his death, and the injury if any sustained by them in the loss of his society.* The italicized portion, which is the portion complained of, is in the language of the instruction given and upheld in *Beeson* v. *Green Mountain etc. Co.,* 57 Cal. 20. That instruction is not the same instruction as the one reviewed and criticised in *Harrison* v. *Sutter Street Ry. Co.,*

116 Cal. 156.   Nor is it the same instruction as those which were under consideration in the other cases cited by appellant. Thus in *Morgan* v. *Southern Pacific Co.,* 95 Cal. 517,[1] it is said: "The Beeson case, therefore, does not decide that the jury may depart from a pecuniary standpoint in assessing damages.   It merely holds that in estimating the pecuniary losses of a wife from the death of her husband they may consider whether or not the deceased was a good husband, able and willing to provide well for his wife."

The judgment and order appealed from are affirmed.

Temple, J., and McFarland, J., concurred.