Points decided.

[No. 1726.]

## GEORGE CHRISTENSEN, AS ADMINISTRATOR OF THE ESTATE OF GEORGE JORGENSEN, DECEASED, RESPONDENT, *v.* FLORISTON PULP AND PAPER COMPANY, A CORPORATION, APPELLANT.

1. APPEAL—RECORD—AMENDMENT. The notice and undertaking on appeal were misplaced, and were not certified to the supreme court. Prior to the argument the papers were found, certified by the clerk and filed with the others. It was also moved prior to the argument that the record on appeal be amended by adding the notice and undertaking. In the meanwhile the entire record was returned to the clerk of the lower court, and his certificate was amended to comply with the statute. *Held,* that there was a substantial compliance with Supreme Court Rule 7, providing that to correct an error in the transcript either party may suggest the error, and obtain an order that the clerk certify to the whole or any part of the record, or may produce it duly certified without the order.

2. DEATH—ACTIONS—JURISDICTION—ACTION UNDER LAW OF OTHER STATE. The right to bring an action for death by wrongful act in a foreign jurisdiction does not rest upon principles of comity, but exists because the action is transitory, and not local.

3. SAME—PUBLIC POLICY OF STATE OF THE FORUM. Courts will enforce a cause of action for death by wrongful act growing out of the laws of another state, when not contrary to the public policy of the state of the forum.

4. SAME—EXTENT OF POLICY. The public policy of a state in respect to enforcing the remedy in an action for death by wrongful act only goes to the extent that it by legislation has changed the common law, and unless the *lex fori* is substantially the same as the *lex loci*, the latter law will not be deemed consistent with the public policy of the forum.

5. SAME—SIMILARITY OF STATUTES. Where the *lex loci* and *lex fori* in respect to actions for death by negligent acts give the same remedy to the same persons, that the former places no restrictions upon the transitory nature of the action, while the latter does, does not affect the policy of the latter so far as it recognizes the cause of action and its enforcement.

6. MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—PROXIMATE CAUSE—QUESTION FOR JURY. In an action for death, the question whether decedent was guilty of negligence proximately causing the accident is for the jury.

7. APPEAL—OMITTING EVIDENCE FROM RECORD—FINDINGS. Where important exhibits used on the trial are not certified as part of the record on appeal, the correctness of the trial court's findings or the verdict cannot be reviewed.

8. TRIAL—INSTRUCTIONS. In an action for death, an abstract instruction that no person has a right to unnecessarily so use his own property as to endanger the physical safety of another is not prejudicial, where, when taken in connection with other instructions, the jury could not have been misled.

9. APPEAL—HARMLESS ERROR. In an action for death, an instruction that it is the duty of a master to provide a safe place for his servants to work, and he cannot escape responsibility for a failure to do so unless it is shown that the servant was guilty of "proximate negligence" in the assumption of obvious risks which resulted in his injury, was not prejudicial, there being no evidence of contributory negligence.

10. DEATH—SUPPORT OF PARENT BY CHILD. Parents have a legal right to financial support from a child during his whole life, and their right to recover for his death is not affected by the amount of his contributions during his life, though the same may be a material factor in determining the amount of damages.

11. SAME—ACTION—INSTRUCTIONS. In an action for the death of a man 30 years old performing manual labor for good wages, an instruction that there was no evidence that decedent had any expectancy of life beyond the day of his death, or that his parents had any expectancy of life beyond the time of the trial, and in the event of a finding for plaintiff only nominal damages should be allowed, was properly refused.

12. SAME—DAMAGES—LEX LOCI. In an action for death inflicted in another state, the recovery of damages is governed by the *lex loci.*

13. SAME—MEASURE OF DAMAGES—COMPENSATION. In an action for death, only actual monetary damages sustained by the person for whose benefit the action is brought are recoverable, and, when more than nominal damages are claimed, their amount must be largely determined upon questions of relationship and dependency existing between decedent and beneficiary at the time of his death.

14. SAME—AMOUNT AWARDED—DISCRETION OF JURY. While the jury is allowed great latitude in awarding damages in actions for tortious death and their decision will not be disturbed except in extreme cases, yet the size of the judgment must be justified by the evidence.

15. SAME—EXCESSIVE DAMAGES—ACTION FOR DEATH. A verdict of $10,000 for the death of a laborer 30 years old, earning $3 a day, is excessive, where it does not appear that he contributed anything to his parents for whose benefit the action is brought, nor that they are in need of assistance, and there is no proof of the expectancy of life of the decedent or beneficiaries except their ages.

16. APPEAL—BRIEFS—SCURRILOUS BRIEF. Where counsel files a brief containing unwarranted reflections upon the trial judge, he may be compelled to expunge the objectionable matter, and be barred from further appearance in the case until he does so.

APPEAL from the District Court of the Second Judicial District of the State of Nevada, Washoe County; *B. F. Curler,* Judge.

Action for damages by George Christensen, administrator of the estate of George Jorgensen, deceased, against The Floriston Pulp and Paper Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals.

**Affirmed** on condition of remittitur, otherwise **reversed,** and new trial granted.

The facts sufficiently appear in the opinion.

*C. H. Wilson* and *James T. Boyd*, for Appellant:

I.   We contend that a law in its nature transitory will be given effect by the courts of a sister state only when the *lex loci* and the *lex fori* are substantially the same, and providing that it is not against the public policy of the laws of the latter state.   In the case at bar we claim that the laws of California and the laws of Nevada are not substantially the same, but, on the contrary, radically different, and we claim that it is the declared public policy of this state, as shown by the act of its legislature, to treat actions of this character as not being of a transitory nature.   Therefore, we contend that the courts of this state must refuse to proceed further with this case; that the case must be dismissed, and the plaintiff allowed to seek his remedy in the courts of the State of California, which can declare the law of the case with authority, and which every one must concede has ample power to enforce its decrees.

II.   It was error for the trial court to charge the jury as follows: "The jury is instructed that no person or corporation has a legal right to unnecessarily so use his or its own property as to endanger the physical safety of another." There is no evidence to warrant such an instruction.   It does not appear that the defendant unnecessarily used its property; on the contrary, the evidence shows that the digester and pipes were used necessarily in the usual and ordinary course of business.   Moreover, there is no such issue; the complaint charges the defendant with using a highly dangerous and insufficient pipe to transmit paper pulp from its digester to its blow-pit tank.   It is elementary that instructions must not only be predicated on the evidence, but also confined to the issues made in the pleadings.   (Hughes on Instructions to Juries, secs. 94 and 95, and numerous cases cited; 11 Ency. Pl. & Pr. 158; *Sargent* v. *Linden M. Co.*, 55 Cal. 204.)

III.   It was error for the trial court to refuse to charge the

jury according to the defendant's fourth requested instruction, as follows: "There is no evidence in this case that the deceased had any expectancy of life beyond the day of his death, or that the father and mother of the deceased have, or that either of them has, an expectancy of life beyond the time of this trial. Therefore, you are instructed that, in the event of your finding for the plaintiff, you must limit the amount of damages to a merely nominal sum." In all cases where the measure of damages is the pecuniary injury sustained by the parties entitled to the benefit of recovery, the expectancy of life of the deceased is a material element for consideration. It is not only material, but is indispensable. (8 Am. & Eng. Ency. Law, 940–947; *Louisville R. Co.* v. *Clarke*, 152 U. S. 230; *Savannah R. Co.* v. *Stewart*, 71 Ga. 427.)

IV. The damages are excessive. We have already considered the rule of damages in cases of this character as well as the evidence in the case. As we have stated, there is no evidence that the deceased ever contributed to the support of his parents; there is no certain evidence of the age of the deceased; there is no proper evidence of the age of the parents, who are the beneficiaries; there is absolutely no evidence of the expectancy of life of the deceased, or of either of the parents, and there is no evidence of any special damages. On this evidence the cases before considered show that the verdict is grossly excessive. (Kinkead on Torts, sec. 476; 8 Am. & Eng. Ency. Law, 922.)

*S. Summerfield*, for Respondent:

I. That this action is of a transitory nature, and can be legally maintained in the courts of Nevada, is not a mere theory, but is a principle of law amply fortified by reason, statutory enactments, and the overwhelming weight of judicial authority, which includes not only decisions of the Supreme Court of the United States and of other federal tribunals, but also the decisions of practically all of the various state appellate courts which have had occasion to pass upon the point involved. (*Dennick* v. *R. R. Co.*, 103 U. S. 11; *Texas & Pacific R. R. Co.* v. *Cox*, 145 U. S. 593; *S. C. R. R. Co.* v. *Nix*, 68 Ga. 572; *Shedd* v. *Moran*, 10 Ill.

App. 618; *Burn* v. *R. R. Co.*, 113 Ind. 169; *Morris* v. *R. R. Co.*, 65 Iowa, 727.) This action being transitory in character, and therefore not limited by provisions of law to the jurisdiction of the California courts, it is earnestly urged by respondent that appellant is estopped from beseeching a dismissal by the Nevada courts for the reason that appellant has given its express consent to be sued in the Nevada courts by appointing and keeping in Nevada an agent upon whom legal process might be served. (Comp. Laws, 899, *et seq.; Connecticut Co.* v. *Spratley*, 172 U. S. 602; Beale on Foreign Corporations, 265.) "The law of the forum, or jurisdiction in which an action for personal injuries is brought, controls as to the form of the remedy, manner of its enforcement, the conduct of the trial, and rules of evidence." (Watson on Personal Injuries, 566; *Eingartner* v. *Illinois Steel Co.*, 94 Wis. 70; *Helton* v. *R. R. Co.*, 97 Ala. 275.)

By the Court, NORCROSS, J.:

This is an action brought by respondent in the Second Judicial District Court of the State of Nevada, in and for Washoe County, to recover a judgment for damages against the appellant for the death of the said George Jorgensen while employed in respondent's paper mill at Floriston, in the State of California, which death is alleged to have been occasioned by appellant's negligence.

It was decedent's duty to cook wood pulp in a large cylindrical digester, and, when the same had been properly cooked, to draw it off from said digester to what was known as the "blow-pit tank." The evidence shows that at about noon, August 31, 1905, the deceased was found buried in a mass of paper pulp at the foot of the digester. The twelve-inch valve at the bottom of the digester was found to be open about two inches and the discharge pipe was broken off immediately beyond the valve, and for the space of a foot, or a foot and a half, it had fallen away. The action is brought for the benefit of decedent's father and mother, who are residents of Denmark.

It is admitted by the pleadings that at the time of the death of the said decedent and at the time of the action the

Civil Code of the State of California contained the following provisions: "When the death of a person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just." (Section 377, Code Civ. Proc. Cal.) "If the decedent leave no issue, nor husband nor wife, the estate must go to his father and mother in equal shares, or if either be dead then to the other." (Subdivision 2, section 1386, Civ. Code Cal.)

At the times in question the code of this state contained, and now contains, the following provisions:

"Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the persons who, or the corporation which, would have been liable if death had not ensued shall be liable to an action for damages notwithstanding the death of the person injured; and although the death shall have been caused under such circumstances as amount in law to a felony. Such liability, however, where not discharged by agreement and settlement shall exist only in so far as the same shall be ascertained and adjudged by a state or federal court of competent jurisdiction in this state in an action brought for that purpose. If the person or corporation against whom damages are claimed cannot be duly served with process in this state, the action to ascertain and adjudge liability for such damages may be brought and prosecuted in any court of competent jurisdiction in any state or territory where such person or corporation is found and duly served with process thereof." (Comp. Laws, 3983, as amended by Stats. 1905, p. 254, c. 148.)

"The proceeds of any judgment obtained in any action brought under the provisions of this act shall not be liable

for any debt of the deceased; *provided*, he or she shall have left a husband, wife, child, father, mother, brother, sister, or child or children of a deceased child; but shall be distributed as follows: First—If there be a surviving husband or wife, and no child, then to such husband or wife; if there be a surviving husband or wife, and a child or children, or grandchildren, then equally to each, the grandchild or children taking by right of representation; if there be no child or grandchild, then to a surviving brother or sister, or brothers or sisters, if there be any; if there be none of the kindred hereinbefore named, then the proceeds of such judgment shall be disposed of in the manner authorized by law for the disposition of the personal property of deceased persons; *provided*, every such action shall be brought by and in the name of the personal representative or representatives of such deceased person; *and, provided further*, the jury in every such action may give such damages, pecuniary and exemplary, as they shall deem fair and just, and may take into consideration the pecuniary injury resulting from such death to the kindred as herein named." (Comp. Laws, 3984.)

Trial was had by jury and a judgment rendered in favor of plaintiff for $10,000 damages. From the judgment and an order denying defendant's motion for a new trial, defendant appeals.

1. Counsel for respondent duly noticed a motion to dismiss the appeal upon the ground that it affirmatively appears from the record that no notice of appeal was ever given as required by law, and, further, that no undertaking on appeal has been executed by appellant. In this case the original papers were certified to this court pursuant to the provisions of section 3862 of the Compiled Laws, and it appears that at the time the clerk of the court below made such certificate the notice and undertaking on appeal had become misplaced, and were not certified with the other papers. Prior to the argument in this court the lost papers were found, certified to by the clerk, and filed in this court and cause. Also, prior to the argument, appellant's counsel moved that the record on appeal be amended or corrected by adding thereto the notice and undertaking on appeal. The motion was sub-

mitted, and in the meantime the entire record was returned to the clerk of the court below, that his certificate thereto might be amended so that the same might conform to the requirements of the statute and the same was so amended. Rule 7 of this court provides: "For the purpose of correcting any error or defect in the transcript from the court below, either party may suggest the same, in writing, to this court, and, upon good cause shown, obtain an order that the proper clerk certify to the whole or part of the record, as may be required, or may produce the same, duly certified, without such order. If the attorney of the adverse party be absent, or the fact of the alleged error or defect be disputed, the suggestion, except when a certified copy is produced at the time, must be accompanied by an affidavit showing the existence of the error or defect alleged." We think there was a substantial compliance with the provisions of this rule, and that it is a proper case for the permission of the amendment of the record as requested, and the same is allowed, and the motion to dismiss is denied.

2. It is very earnestly contended by appellant's counsel that the courts of this state have no jurisdiction of this cause, for the reason that the death of deceased was occasioned and occurred in the State of California, and that, "owing to the peculiar policy of the State of Nevada with reference to actions of this kind, its courts will not, through so-called comity, take jurisdiction of this cause." At common law an action for damages resultant from death by wrongful act could not be maintained. The first legislation in English-speaking countries permitting an action of this character was by the British Parliament in 1846, which passed what has since been known as "Lord Campbell's Act." Similar statutes have since been passed in most, if not all, of the states of this country. While these statutes differ somewhat in their terms, their general purpose was substantially the same.

A variety of decisions may be found upon the question whether the courts of one state will assume jurisdiction of an action brought therein for damages for a death occasioned in another state. A number of early decisions held

that such jurisdiction did not exist or would not be assumed unless the statutes of both states were essentially the same. What is now regarded as the leading case on questions of this kind is *Dennick* v. *Railroad Company*, 103 U. S. 11, 26 L. Ed. 439. In that case action was brought in the state courts of New York for a death occasioned in New Jersey. The case was removed to the Circuit Court of the United States, which court held that the plaintiff could not under the special statute of New Jersey recover in the action. Upon appeal to the Supreme Court of the United States the decision was reversed, the court, by Justice Miller, saying: "It can scarcely be contended that the act belongs to the class of criminal laws which can only be enforced by the courts of the state where the offense was committed, for it is, though a statutory remedy, a civil action to recover damages for a civil injury. It is indeed a right dependent solely on the statute of the state; but when the act is done for which the law says the person shall be liable, and the action by which the remedy is to be enforced is a personal and not a real action, and is of that character which the law recognizes as transitory and not local, we cannot see why the defendant may not be held liable in any court to whose jurisdiction he can be subjected by personal process or by voluntary appearance, as was the case here. It is difficult to understand how the nature of the remedy, or the jurisdiction of the courts to enforce it, is in any manner dependent on the question whether it is a statutory right or a common-law right. Whenever, by either the common law or the statute law of a state, a right of action has become fixed and a legal liability incurred, that liability may be enforced and the right of action pursued in any court which has jurisdiction of such matters and can obtain jurisdiction of the parties. The action in the present case is in the nature of trespass to the person always held to be transitory, and the venue immaterial. The local court in New York and the Circuit Court of the United States for the Northern District were competent to try such a case when the parties were properly before it. (*Mostyn* v. *Fabrigas*, 1 Cowp. 161; *Rafael* v. *Verelst*, 2 W. Bl. 983; 1055; *McKenna*

*v. Fisk*, 1 How. 241, 11 L. Ed. 117.)   We do not see how the fact that it was a statutory right can vary the principle.   A party legally liable in New Jersey cannot escape that liability by going to New York.   If the liability to pay money was fixed by the law of the state where the transaction occurred, is it to be said it can be enforced nowhere else because it depended upon statute law and not upon common law?   It would be a very dangerous doctrine to establish that in all cases where the several states have substituted the statute for the common law the liability can be enforced in no other state but that where the statute was enacted and the transaction occurred."

Both the early and the modern views of the courts generally are succinctly stated in the comparatively modern work of Minor on Conflict of Laws (1901).   The author says: "Section 200.   Death by Wrongful Act—Increasing Liberality of the Courts.   In the cases on this subject two main questions were first presented.   If a tortious death is actionable by the *lex fori* only, will that statute govern?   If actionable by the *lex delicti*, will that statute control?   The first question was at once decided in the negative, and the correctness of the ruling cannot be questioned.   It is with regard to the second question that the greatest conflict of opinion has occurred.   The view first advanced was that, although the *lex delicti* made the tortious death actionable, it would be of no avail upon an action brought in another state, even though the death was made actionable by the *lex fori* also, because such statutes were to be regarded as penal, or at least as having no exterritorial force.   As more liberal ideas advanced, the next step taken by the courts was to recognize the statutes as remedial, not penal, and to permit actions to be brought in one state for a tortious death resulting in another state and actionable there, provided there was a statute substantially similar in the state of the forum.   But if there were any very marked dissimilarities between the statutes of the two states, this was still taken to indicate that the enforcement of the *lex delicti* was contrary to the policy of the forum, and the right to sue there would be denied.   The present tendency of the more recent decisions

is to advance still further towards liberality and to throw open the courts to litigants whose cause of action has arisen in other states and under the laws thereof, even though not actionable at common law or not actionable if it had arisen in the forum, provided the enforcement of the *lex delicti* would not seriously contravene the established policy of the forum. The presumption is in favor of the right to sue, and the burden rests upon the party objecting to show that the enforcement of the 'proper law' would be inconsistent with the domestic policy."

In support of the last paragraph quoted the author cites the following authorities: *Stewart* v. *Railroad Co.*, 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537; *Texas R. R. Co.* v. *Cox*, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829; *Huntington* v. *Attrill*, 146 U. S. 657, 670, 13 Sup. Ct. 224, 36 L. Ed. 1123; *Dennick* v. *Railroad Co.*, 103 U. S. 11, 26 L. Ed. 439; *Law* v. *Railroad Co.* (C. C.), 91 Fed. 817, 819; *Higgins* v. *Railroad Co.*, 155 Mass. 176, 29 N. E. 535, 536, 31 Am. St. Rep. 544; *Nelson* v. *Railroad Co.*, 88 Va. 971, 14 S. E. 839, 15 L. R. A. 583; *Herrick* v. *Railroad Co.*, 31 Minn. 11, 16 N. W. 413, 47 Am. Rep. 771, 773. To these we add the following: *Wooden* v. *Western New York R. Co.*, 126 N. Y. 10, 26 N. E. 1050, 13 L. R. A. 458, 22 Am. St. Rep. 803; *Weaver* v. *B. & O. R. R. Co.*, 21 D. C. 499; *McLeod* v. *Railroad Company*, 58 Vt. 727, 6 Atl. 648; *Johnson* v. *Railway Co.*, 91 Iowa, 248, 59 N. W. 66; *St. Louis Ry. Co.* v. *Haist*, 71 Ark. 258, 72 S. W. 893, 100 Am. St. Rep. 65; 13 Cyc. 313, *et seq.*

The right to bring such an action in a foreign jurisdiction does not rest, as some of the decisions seem to put it, upon principles of comity, but rather because "the action by which the remedy is to be enforced is a personal, and not a real, action, and is of that character which the law recognizes as transitory, and not local." Because the cause of action is in its nature transitory, courts of other jurisdictions will enforce such rights growing out of the laws of a foreign state, unless it can be said that such laws are contrary to the public policy of the state of the forum. As the common law did not recognize this cause of action, it may be said that the public policy of a state in this regard only goes to the extent that it by

legislative enactment has changed the common law, and therefore that, unless the *lex fori* is substantially the same as the *lex loci*, the latter law will not be deemed consistent with the public policy of the forum. In determining whether the two acts are substantially the same, the policy of the courts has changed from the rather contracted view taken when the question was new to a broad and liberal view, which may now be said to very generally prevail.

A very proper rule for guidance may be deduced from the following language of the Supreme Court of Appeals of New York in *Wooden* v. *Railroad Company*, *supra:* "We refer to the *lex fori*, and measure it by and compare it with the *lex loci*, I think, for two reasons: One, that the party defendant may not be subjected to different and varying responsibilities; and the other that we may know that we are not lending our tribunals to enforce a right which we do not recognize, and which is against our own public policy, and we do not refer to our law as creating the cause of action which we enforce."

The Supreme Court of the United States the first time the question was presented to it adopted a very liberal view, which later decisions have broadened, as the following extract from the opinion of the court by Brewer, J., in *Stewart* v. *B. & O. R. R. Co.*, 168 U. S. 445, 448, 18 Sup. Ct. 105, 106, 42 L. Ed. 537, will indicate: "An action to recover damages for a tort is not local, but transitory, and can as a general rule be maintained wherever the wrongdoer can be found. (*Dennick* v. *Railroad Company*, 103 U. S. 11, 26 L. Ed. 439.) It may well be that, where a purely statutory right is created, the special remedy provided by the statute for the enforcement of that right must be pursued, but, where the statute simply takes away a common-law obstacle to a recovery for an admitted tort, it would seem not unreasonable to hold that an action for that tort can be maintained in any state in which that common-law obstacle has been removed. At least, it has been held by this court in repeated cases that an action for such a tort can be maintained 'where the statute of the state in which the cause of action arose is not in substance inconsistent with the statutes or public policy of the state in which the right of action is sought to be enforced.'"

Are the statutes of California and Nevada so dissimilar that it ought to be said that it is against the public policy of this state to entertain this action? In both states the right of action is given for the recovery of damages for death by wrongful act. The person for whose benefit the action could be brought for damages in this instance is the same under both statutes. However, the only point of dissimilarity which is seriously urged as affecting the public policy of this state is that in reference to the extent to which the action is made transitory by the laws of the two states. In the law of California there are no restrictions and the action is maintainable, so far as that law is concerned, in any state where jurisdiction can be obtained over the person of the defendant. Under the Nevada statute the extent to which the action is transitory is restricted. If the death is occasioned in this state, and personal service can be had within this state upon the person or corporation liable in damages for such death, action must be maintained here and the cause of action, under such circumstances, is not transitory. But the statute of this state specifically provides that, if service of process cannot be made in this state upon the person or corporation liable, "the action * * * may be brought and prosecuted in any court of competent jurisdiction in any state or territory where such person or corporation is found and duly served with process thereof."

In this material respect the statute differs from that construed in the case of *Coyne* v. *Southern Pacific Co.* (recently decided by the Circuit Court of the United States for the District of Utah), 155 Fed. 683, and that case, therefore, throws little, if any, light upon the question under consideration in this case. While the legislature of this state has restricted the extent to which actions of this nature are transitory, it cannot be said that there is anything in the act so restricting the nature of the action itself as would warrant a holding that there is a manifested policy against the cause of action. Doubtless the reason that actuated the legislature in making the restriction was the idea that justice to both parties could more readily or conveniently be had by requiring the action to be brought in the courts of this state for

damages resulting from a death occasioned in this state in cases where jurisdiction over the person of the defendant within the state could be obtained. The restriction goes to the remedy rather than to the right of action. And, as the remedy unquestionably can be enforced as fully by the courts of this state as those of any other, it was entirely within the province of the legislature to make considerations of convenience a ground for requiring the redress for the injury inflicted to be applied within the state where the injury occurred. This, however, does not affect the policy of the state so far as it recognizes the cause of action and its enforcement. If the State of California had a similar provision in its statute, unquestionably this action could not be maintained in this state. Then the situation would be like that presented to the court in the case of *Coyne* v. *Southern Pacific Company*, *supra*. As the cause of action is by the statute of California transitory, and as the enforcement of such a cause of action is recognized by the statutes of this state, and hence does not contravene its public policy, the trial court did not err in its assumption of jurisdiction.

3. The next contention made for appellant is that "the evidence fails to show any negligence on the part of the defendant proximately causing the accident and injury complained of." The question of negligence upon the part of defendant being responsible for the death of Jorgensen was necessarily a question of fact for the jury. As there were no living witnesses to the accident, the question had to be determined very largely from the physical conditions found to exist immediately following the accident, as described by witnesses and gleaned from certain exhibits, which the record shows were admitted in evidence, taken in connection with the testimony of witnesses concerning a state of facts existing prior to the accident with reference to the pipes leading from the digester to the blow-pit tank. There was evidence to the effect that the acids used in the cooking of the wood pulp had a corroding effect upon the iron pipes leading from the digester to the blow-pit tank, and that occasionally they had to be removed; that about a month prior to the accident the pipe began to leak, and that a patch was placed upon the

same by order of the superintendent of the works; that the
decedent had nothing to do with the care of the pipes, and
the same were so situated that he could not readily see their
condition. The digester is shown by the evidence to have
been about forty feet high and fifteen feet in diameter. It
had a capacity of fifteen cords of chipped wood and twenty
thousand gallons of water to which was added sulphurous
acid, lime, and magnesite. After the digester was filled, a
cover was bolted upon the top, and by the introduction of
steam a temperature of 320 degrees Fahrenheit was applied,
and when at such heat the gage on the digester would indi-
cate a pressure of from eighty to eighty-five pounds to the
square inch. When the contents of the digester were suf-
ficiently cooked, the "cooker" would open the valve at
the bottom of the digester, and permit the contents to be
discharged into the blow-pit tank. When the accident
occurred which resulted in the death of Jorgensen, it was
found that the valve was opened about two inches, from
which the jury would be justified in inferring that Jorgensen
had begun to draw off the contents of the digester. The pipe
exploded near the valve and at the point where the patch had
been placed upon the pipe about a month previous. From
this state of facts the jury were justified in reaching the con-
clusion that the explosion of the pipe was the proximate
cause of the death of Jorgensen, and that the explosion was
occasioned by the defendant's negligence in continuing to
use a worn and defective pipe after it had become aware of
its defective condition. While we have thus briefly gone
into the evidence as disclosed by the record upon this point,
it would have been sufficient to have determined the question
upon the technical point raised by respondent, that all of the
evidence is not before this court, and that, under decisions
of this court, where the record discloses such a state of facts,
this court will not question the correctness of the findings of
the trial court or the verdict of the jury. It appears from
the record that the plaintiff, as part of his case to establish
negligence, introduced certain exhibits testified to as being
pieces of the iron pipe which exploded. It is claimed by
respondent that these pieces of pipe constituted very material

evidence upon the question of appellant's negligence. These exhibits have not been certified to this court as part of the record on appeal, and hence all of the evidence upon this question is not before the court. (Comp. Laws, 3862, 3864; *State* v. *Campbell*, 20 Nev. 122, 17 Pac. 620; *State* v. *Parsons*, 7 Nev. 57; *State* v. *Bonds*, 2 Nev. 265.)

4. Error is assigned in the following instructions given by the court to the jury: "The jury is instructed that no person or corporation has a legal right to unnecessarily so use his or its own property as to endanger the physical safety of another." It is not contended that this is an erroneous statement of an abstract legal principle. Even if we were to concede that it is not strictly applicable in the present case, nevertheless, we think, when taken in connection with other instructions given, the jury could not have been misled by it.

5. The giving of the following instruction is also assigned as error: "The jury is instructed that fundamentally it is the duty of a master to provide a safe place at which or in which his servants shall work, and, if he fails to do so, he cannot escape responsibility for such failure, unless it is shown that the servant himself was guilty of proximate negligence in the assumption of obvious and apparent risks which resulted in the infliction or sustainment of his injuries." Concerning this instruction appellant's counsel says: "This instruction is unintelligible. There is no such thing in the law as proximate negligence, neither is there such thing in the law as negligence in the assumption of obvious and apparent risks. The instruction, therefore, is an erroneous statement of the law. Before plaintiff can recover in a suit of this character, the evidence must show that the negligence of the defendant was the proximate cause of the accident, and it must not show any negligence on the part of plaintiff contributing as a proximate cause to the accident." It is not contended in the briefs of appellant that there is any evidence in this case which involves the question of contributory negligence upon the part of decedent; nor do we think there is anything in the record warranting the conclusion that the character of decedent's employment was such that an accident like that which pro-

duced his death was ordinarily and usually incident to such employment, and that he was therefore presumed to have contracted with reference to the risk or hazard of such accidents.

While we agree with appellant's counsel that, so far as our knowledge and research goes, and with the light of respondent's brief, "proximate negligence" is something new to the jurisprudence of personal damages, nevertheless, under the facts of this case, we are unable to see in what way this instruction could have been prejudicial to the defendant. Conceding that there may be such a condition which could appropriately be designated as "proximate negligence," it would necessarily be a condition closely approaching, but which could hardly be said to reach, the degree of negligence itself. An instruction, the effect of which would be that something less than negligence upon the part of the person injured might be sufficient to relieve the master from liability for the latter's negligence, could hardly be prejudicial to a defendant in any case. While we wish to be understood clearly as not, at this time, recommending this instruction as a model for use in any case, nor as holding that it is not erroneous, we do hold that it could not have prejudiced defendant's rights in this case. In this connection counsel for appellant have not been any more convincing in their argument that this instruction was prejudicial to defendant than has counsel for respondent been successful in finding some authority that would stand sponsor for the expression "proximate negligence."

6. Error is assigned in the refusal of the trial court to give the following instruction: "There is no evidence in this case tending to prove that George Jorgensen was in the habit of saving his wages, or whether he was in the habit of spending all his earnings, or whether he ever contributed toward the support of or to his father and mother, or either of them, or whether the father or mother, or either of them, ever had any reasonable expectation of receiving aid from him. Therefore, if you find a verdict in favor of the plaintiff, you must limit the amount of damages to a merely nominal sum." The refusal to give this instruction was held error in the case of

*Burk* v. *Arcata Ry. Co.*, 125 Cal. 365, 57 Pac. 1065, 73 Am. St. Rep. 52, and it is contended that it is the established law of the State of California applicable to facts such as it is claimed the record in this case discloses, and, being the law of California, the courts of this state are bound by it.

Action was brought in the Burk case, *supra*, for the collateral heirs, two brothers and a sister of decedent. The same instruction was requested (by the leading counsel for appellant in this case) in the case of *Hillebrand* v. *Standard Biscuit Co.*, 139 Cal. 233, 237, 73 Pac. 163, and its refusal sustained. In the latter case action was brought for the benefit of the father and mother for the death of their daughter, occasioned by the negligence of the defendant, Standard Biscuit Company. In the Hillebrand case, *supra*, the court, after distinguishing the two cases upon the facts, said: "Moreover, in the latter case (125 Cal. 364, 57 Pac. 1065, 73 Am. St. Rep. 52) the action was brought by collateral relatives who under no circumstances could have any legal right to pecuniary aid from the deceased, while parents may have the legal right to financial support from a child, and at any time during its life." This case was not cited to this court, but we think it sufficiently answers appellant's contention. See, also, the case of *In re California Nav. & Imp. Co.* (D. C.), 110 Fed. 670, 677.

7. Defendant also requested the following instruction, the refusal to give which is assigned as error: "There is no evidence in this case that the deceased had any expectancy of life beyond the day of his death, or that the father and mother of the deceased have, or either of them has, an expectancy of life beyond the time of this trial. Therefore you are instructed that, in the event of your finding for the plaintiff, you must limit the amount of damages to a merely nominal sum." If there was any evidence at all in the case which the jury could consider as going to the question of the expectancy of life of decedent, this instruction would not be proper. The mere fact that decedent was shown to be a man of only about 30 years of age, and was upon the day of his death performing, and for a long time prior thereto had been performing, manual labor for which he was receiving good wages, was some evidence, to say the least, upon which the

jury could conclude he had some expectancy of life beyond the day of his death. (*Louisville R. Co.*, v. *Morgan*, 114 Ala. 449, 22 South. 20; *Beems* v. *Chicago R. Co.*, 67 Iowa, 435, 26 N. W. 693.)

8. The last contention urged by appellant's counsel is that the jury awarded excessive damages. The amount of damages which the plaintiff is entitled to recover is governed by the law of California. However, the only material point of difference between the laws of the two states is in regard to exemplary damages, which a jury in this state, in a proper case, is authorized to impose. The trial court properly instructed the jury that they could not consider exemplary damages in rendering their verdict; hence, no part of this judgment can be regarded as punitive. (*Lange* v. *Schoettler*, 115 Cal. 388, 47 Pac. 139; *Munro* v. *Pacific Coast D. & R. Co.*, 84 Cal. 515, 24 Pac. 303, 18 Am. St. Rep. 248; *Morgan* v. *Southern Pacific Co.*, 95 Cal. 510, 30 Pac. 603, 17 L. R. A. 71, 29 Am. St. Rep. 143.) All that counsel for respondent has to say in his brief upon the question of whether or not the damages are excessive, outside of his contention that the jury could impose exemplary damages, is found in the following extract: "The evidence is amply sufficient to justify the verdict and judgment, and that without even considering the phase of exemplary damages. The amount awarded, $10,000, is comparatively a small damage to pay for a human life lost through gross negligence of an employer, is but one-third of the amount demanded, and was fixed by the legally constituted authority, the jury."

Whether or not $10,000 is a large or a small damage to pay for a human life depends entirely upon the facts of a given case. In one sense no amount of money might compensate for a human life, but the law only looks at the question from the point of actual monetary damage sustained by the person for whose benefit the action is brought, and not that inflicted upon the decedent. (*Redfield* v. *Oakland R. Co.*, 110 Cal. 277, 42 Pac. 822.) Where more than nominal damages is claimed, such damages must be determined very largely upon questions of relationship and dependency existing between the decedent and the beneficiary at the time of

the death.   The amount of damage alleged cannot be taken
by the jury into consideration in estimating the award,
excepting in so far as it fixes a maximum beyond which
the jury may not go.   The jury must be governed by the
evidence under proper instructions, and, if it renders a ver-
dict for an amount manifestly in excess of anything which
the facts of the case would warrant, it is the duty of the
court to modify or set it aside.   The jury were elaborately
instructed upon the law that should govern them in deter-
mining the amount of damages to which the plaintiff would
be entitled in the event they found in plaintiff's favor.
Without setting out these instructions, we think it sufficient
to say they substantially coincide with the law as declared
by the courts of California.

   In the recent case of *Sneed* v. *Marysville Gas Co.*, 149 Cal.
704, 710, 87 Pac. 376, 378, the Supreme Court of California,
discussing the measure of damages in cases of this kind,
said: "With regard to the measure of damages, in view of
the argument made, and of the probability of another trial,
it is proper to say that it is definitely settled that under our
statute the damages to be recovered for an injury causing
death are always limited to the pecuniary loss suffered by the
heirs of the person killed by reason of his death.   (*Munro* v.
*Dredging Co.*, 84 Cal. 515, 24 Pac. 303, 18 Am. St. Rep. 248;
*Morgan* v. *Southern Pacific Co.*, 95 Cal. 510, 30 Pac. 603, 17
L. R. A. 71, 29 Am. St. Rep. 143; *Pepper* v. *Southern Pacific
Co.*, 105 Cal. 401, 38 Pac. 974; *Green* v. *Southern Pacific Co.*,
122 Cal. 566, 55 Pac. 577; *Wales* v. *Pacific E. M. Co.*, 130 Cal.
523, 62 Pac. 932, 1120; *Keast* v. *Santa Ysabel Co.*, 136 Cal.
260, 68 Pac. 771; *Dyas* v. *Southern Pacific Co.*, 140 Cal. 308,
73 Pac. 972; *Hillebrand* v. *Standard B. Co.*, 139 Cal. 236, 73
Pac. 163.)   We think it may be further said that this pecu-
niary loss may be either a loss arising from the deprivation
of something to which such heirs would have been legally
entitled if the person had lived, or a loss arising from a
deprivation of benefits which, from all the circumstances of
the particular case, it could be reasonably expected such
heirs would have received from the deceased had his life not
been taken, although the obligation resting on him to bestow

such benefits on them may have been a moral obligation only. (8 Am. & Eng. Ency. Law, 2d ed. 922, 939; 13 Cyc. Law & Pro. 367; *Redfield* v. *Oakland C. S. Ry. Co.*, 110 Cal. 288, 42 Pac. 822; 3 Sutherland on Damages, 3d ed. sec. 1272, p. 3736, sec. 1273, p. 3740.)"

In the case of *Lange* v. *Schoettler*, 115 Cal. 388, 390, 47 Pac. 139, the court said: "Only such damages can be recovered as the statute authorizes, and, in the absence of an express provision authorizing a different rule, the only damage allowed is the probable value of the life to those in whose behalf the action is brought. Of course, this cannot include any grievance personal to the deceased or any damage allowed in the interest of the people as punishment. The relatives, or the representatives in their behalf, can recover the value of that which they have lost through the wrongful act of the defendant, and nothing more. It is true, in the case of a mother or a wife, the jury have been allowed to consider the fact that they were deprived of the comfort, society, and protection of a son or husband, but it has been always held that this was in strict accordance with the rule that only the pecuniary value of the life to the relatives could be recovered. The probable comfort, society, and protection of the deceased had some pecuniary value. The rule for computing damages in section 377 is expressly made applicable, and no doubt it was thus left in the judgment of the jury because all the elements upon which the estimate of pecuniary loss was to be based were problematical. The comfort, society, and protection, as well as the support which is to be estimated, is only something which might have been. The age, character, disposition, and health of the deceased were all to be taken into consideration. Everything is uncertain and indefinite. Therefore it is left to the jury to say what they deem just, and if they have not made their estimate upon a wrong basis, and have not acted under the influence of passion or prejudice, their judgment is final."

In *Morgan* v. *Southern Pacific Co.*, 95 Cal. 501, 508, 30 Pac. 601, 602, the court said: "There is no absolute rule in such a case; and about all that can be safely said on the subject may be found in the opinion of the court in *Aldrich* v. *Palmer*,

24 Cal. 513, and the cases there cited. The general conclusion, as nearly as can be formulated, is as there stated, namely: That a verdict will not be disturbed because excessive, unless the amount of the damages is obviously so disproportionate to the injury proved as to justify the conclusion that the verdict is not the result of the cool and dispassionate discretion of the jury." (*Redfield* v. *Oakland Ry. Co.*, 110 Cal. 286, 42 Pac. 822.)

The general rule governing appellate courts in cases of this kind is concisely stated in 13 Cyc. as follows: "While the general rule is that the recovery must be confined to strictly pecuniary damages, the jury are not bound by any fixed and precise rules in estimating the amount of damages, save by the statutory limit, where such limit exists, but may give compensation for all injuries, proceeding from whatever source, and their discretion in fixing the amount of damages should not be interfered with by the court, unless it has been palpably abused. The rule has sometimes been thus stated: To justify interference by the court with the verdict of the jury, it must appear that some rule of law has been violated, or else that the verdict is so excessive or grossly inadequate as to indicate partiality, passion, or prejudice in the minds of the jurors. * * * However, the discretion of the jury in awarding damages is under the control of the court, and damages out of all proportion to the actual earnings of the deceased or to any reasonable expectation of pecuniary benefit from him will not be allowed; and, where the circumstances of the case or the evidence produced indicate that the verdict was the result of bias, prejudice, or gross overestimate, the courts have not hesitated to set such verdict aside. The courts have shown less hesitation in setting aside the verdict where the action is brought for the benefit of next of kin not dependent upon the deceased than where the action is for the benefit of the widow or children, and, where the amount awarded is clearly in excess of the expectation of pecuniary benefit to be derived from deceased by such next of kin, the judgment will be reversed." (13 Cyc. pp. 375–379, and authorities cited.)

In 8 Am. & Eng. Ency. Law, 2d ed. 922, the rule govern-
ing recovery for death of an adult son is thus stated: "When
the action is by a parent for the death of an adult son, sub-
stantial damages are recoverable only by showing that the
deceased had been of actual pecuniary benefit to his parent,
or that such benefit might be reasonably expected by the con-
tinuance of his life, the reasonable character of such expecta-
tion to appear from the facts in evidence.   Otherwise, only
nominal damages may be recovered."

Tiffany, in his work, "Death by Wrongful Act," says:
"The proper measure of damages is the present worth of the
amount which it is reasonably probable the deceased would
have contributed to the support of the parent during the
latter's expectancy of life, in proportion to the amount he
was contributing at the time of his death, not exceeding his
expectancy of life, though it would seem that the rule is not
to be applied with mathematical strictness, and that the jury
may properly take into consideration the increasing wants of
the parent, and the increasing ability of the child to supply
them.   In *Hutchins* v. *St. Paul, M. & M. Ry. Co.*, 44 Minn. 5,
46 N. W. 79, it was said: 'The proper estimate can usually
be arrived at with approximate accuracy by taking into
account the calling of the deceased, and the income derived
therefrom, his health, age, talents, habits of industry, his
success in life in the past, as well as the amount of aid in
money or services which he was accustomed to furnish the
next of kin, and, if the verdict is greatly in excess of the sum
thus arrived at, the court will set it aside or cut it down.'"
(Section 168, p. 211.)   In notes to sections 168 and 169 the
author sets forth a brief reference to thirty or more decisions
showing "the application of the rules in actions for the death
of adult children, particularly with reference to the amount
of the verdict."

In the cases referred to the nearest approach to a judgment
as large as that given in this case is that of *Little Rock Ry.
Co.* v. *Voss* (Ark.), 18 S. W. 172, where it was held that a
judgment for $6,500 was not excessive upon a showing that
the deceased contributed to the support of his mother and
her invalid daughter, who belonged to her family, $30 to $50

a month, and gave his sister $5 to $20 per month when necessary. He was healthy, and his expectancy of life was thirty-two and one-half years, and he earned from $100 to $150 a month. His mother was .59 years old, and her expectancy was fourteen and three-fourths years. His sister was 19 years old, and her expectancy forty-two years. In the case of *O'Callaghan* v. *Bede*, 84 Cal. 489, 24 Pac. 269, where it was shown that deceased was 23 years old, of good habits, and the sole support of his mother and her minor children, to whom he gave from $40 to $50 per month, a verdict for $3,000 was held not excessive. In every other case cited by the author the damages allowed were less than half that allowed in this case, and, with possibly one exception, in every case there was a showing of substantial contribution to the support of the parent. In the case of *Hutchins* v. *St. Paul Ry. Co.*, 44 Minn. 5, 46 N. W. 79, from which the author quotes in his text, a verdict for $3,500 was reduced to $2,000 upon a showing that the deceased did not contribute in excess of $50 per year to his mother, whose expectancy of life was seven and one-half years.

While it cannot be said that a judgment in one case is a proper criterion for a judgment in another, and while each case must be considered from its own facts and circumstances established by proof, and while a very large latitude is allowed the jury in the estimate of damages, nevertheless, if the award of damages is obviously so disproportionate to the injury proved as to justify the conclusion that the verdict is not the result of the cool and dispassionate discretion of the jury, such judgment must be set aside or else so modified as to bring it within such a limit as the proofs might justify.

In this case the only facts established by the record which the jury could consider in its estimate of damages were that the decedent at the time of his death was about 30 years of age; that he was earning at the time of his death $3 a day; that he had been in this country about seven years and had been employed at various places; that he had on deposit in bank at the time of his death $462.12; that he left surviving him a father and mother, residents and subjects of the kingdom of Denmark, of the ages, respectively, of 68 and 58

years. There was no proof as to the expectancy of life of any of said parties outside of the mere fact of their ages, to which, of course, the jury could apply their general knowledge. There was no proof whatever of the condition of health of either of said beneficiaries, nor of the decedent, except that which might be gleaned from the fact of his being able to engage in remunerative employment. There is no proof from whence deceased derived the money left by him in the bank—whether it was savings from his wages, or was derived from some other source, is purely speculative. There is no proof that during his seven years of residence in this country he ever contributed a dollar to the support of his parents, or ever made them a gift of money or anything of value, nor is there any proof that the parents of decedent were ever in need of assistance from decedent or likely to be in need of such. In fact, there is no evidence whatever of their condition, either present or prospective, in the case. There is, however, no presumption that the parents are possessed of property sufficient to support them in their declining years. Of all the cases involving damages for the death of an adult child to which our attention has been directed, and of the many others we have examined, but few approach, and none equal, this case in the amount of damages awarded, and with the possibility of one exception, where the facts as disclosed upon the trial may not have been fully reported in the case (*Webb* v. *D. & R. G. Ry. Co.*, 7 Utah, 363, 26 Pac. 981), none appear so deficient in proof of actual damage. Even though the statute allows the jury great latitude in fixing an award of damages in cases of this kind, which courts will not disturb excepting in extreme cases, nevertheless the judgment must be for an amount which under the evidence adduced is just. In this case we are impelled to conclude that in view of the evidence the judgment is excessive.

We have decided to reverse the judgment and grant a new trial, unless respondent shall consent to a modification of the judgment to the sum of $3,000, and, if such consent is filed, the judgment to be modified accordingly and as modified affirmed.

Before concluding this opinion, we think it proper to here take notice of the character of briefs which appellant's counsel have filed in this case in so far as they contain certain references and allusions which tend to reflect upon the judge who presided at the trial of this case. These allusions are in the main based upon matters entirely foreign to anything which appears in the record, and, in so far as it is claimed they are justified by the record, we have no hesitancy in saying they are without justification. Counsel have not attacked in their briefs a single ruling of the trial court upon questions of the admissibility of testimony to which they excepted at the time of the trial, and his rulings upon instructions we have in his opinion sustained. The matter in the briefs to which we refer we regard as a breach of professional propriety. We deem the references sufficiently censurable to require that appellant's counsel expunge from the said briefs all references to the conduct of the trial judge comprised in the last four sentences of the last paragraph of their opening brief and all of paragraph 9 of their reply brief, and, until such objectionable matter shall be expunged, counsel for appellant shall not be heard further in this case either in this court or in the lower court. Precedent is not needed to support this order, but the same may be found in the following authorities: *Sears* v. *Starbird*, 75 Cal. 91, 16 Pac. 531, 7 Am. St. Rep. 124; *Friedlander* v. *Summer*, 61 Cal. 116; *Long-Bell Lumber Co.* v. *Newell* (Okl.), 91 Pac. 697.

For the reasons heretofore given, it is ordered that, unless counsel for respondent shall within ten days from the receipt of a copy of this opinion and order file in this court and cause written consent that the judgment be modified by reducing the same to the sum of $3,000, such judgment is reversed and a new trial ordered. In the event such written consent is filed, it is the order that the judgment be modified accordingly by reducing the same to the sum of $3,000, and the order denying a motion for a new trial be affirmed.